trust. The fund and the trust are derived from the will, and the trustee must claim under that instrument, in addition to the authority conferred upon him by his appointment by the supreme court of New York. He must, therefore, probate the will in this state, before he can enforce the title under this trust here. He must also be appointed in proper form, and by the proper tribunals, both in New York and in this state. The proper form undoubtedly is an appointment as trustee under the will, to execute the entire trust, with a bond holding him responsible for the interest of all persons who have any rights, contingent or otherwise, under the will.

Which is the proper tribunal to make the primary appointment of the trustee, is not so clear. The trust was created by a will executed at the domicil of the testatrix, in Illinois, where her death took place, her will was probated, and her estate settled. But neither the fund, nor the primary cestui que trust, nor any other party interested in the same, resides in that state. The primary cestui que trust, Homer Collins, has his domicil in New York. But there is no fund there, nor, so far as it appears in the proof, has this will ever been probated there. Of course, that omission could be easily supplied, if need be, before other proceedings are instituted. The will being proved and made effective in New York, where the primary cestui que trust resides with his grandparents, his natural guardians and protectors, it would seem to pertain to that jurisdiction to appoint the trustee, and supervise the administration of the trust. Certainly, the trust could be more intelligently and economically administered by a trustee residing in the vicinity of the ward. It was undoubtedly the expectation of the testatrix that the fund would be held in New York, as the trustee whom she appointed resided there, as well as the cestui que trust. The fund, which is now temporarily in the hands of the defendant, should be returned to the domicil of Homer Collins. The only object I have had in view, in touching upon this point, has been to suggest the question as to which jurisdiction should primarily appoint the trustee. As I have already stated, inasmuch as the trustee is to obtain the fund from one jurisdiction, and hold and execute the trust in another, he must receive an appointment from both. It may, after all, not be important which court first appoints him. The only material point is, that he should be first appointed and qualified in New York, before any court sitting in Connecticut could properly direct the fund to be passed over to him. If it should be contended that Illinois, the domicil of the testatrix by whose will this trust was created, is the proper jurisdiction to appoint a successor, it may be replied, that both the beneficiaries and the fund are situated elsewhere. There is nothing but the will, and its original probate in that state, upon which its jurisdiction can

act; and, as the fund was received by the deceased trustee under an appointment by the court in New York, and was brought into that state by him, and from there into this state, perhaps his administrator would be estopped from denying the authority of that court to appoint his successor. At all events, after a proper appointment there, the plaintiff can prove the will here, have his appointment repeated here, and then apply to the court of probate, under the statute of Connecticut already cited, or apply directly to this court.

It is no more than just to the defendant to say, that he admits that his intestate received the property in question from Wadhams, the executor of the will, as trustee, and brought into this state the avails, which are now in the defendant's hands; and that, as administrator, he is ready and anxious to pay over whatever has come into his hands, after the account of his intestate, as trustee, shall have been properly adjusted. His only solicitude is to pay to the person properly authorized to receive, and in accordance with the law.

---

CURTIS (UNITED STATES v.). See Cases Nos. 14,904 and 14,905.

CURTIS (WIGHT v.). See Case No. 17,628.

CURTIS (WOODWORTH v.). See Cases Nos. 18,012 and 18,013.

CURTIS (WRIGHT v.). See Case No. 18,075.

CURTIS (YATES v.). See Case No. 18,127.

---

## Case No. 3,506.

### CURTISS v. GEORGETOWN & A. TURNPIKE CO.

[2 Cranch, C. C. 81.][1]

Circuit Court, District of Columbia. Nov. Term. 1813.

GENERAL ISSUE IN ACTION OF DEBT—EVIDENCE OF FRAUD OR IRREGULARITY.

In an action of debt founded upon an injunction taken under the charter of the Georgetown & Alexandria Turnpike Company, of the 3d of March, 1809, the defendant, upon the plea of nil debet, may give evidence of fraud, or partiality, or irregularity on the part of the jurors who took the inquest. But the jurors themselves cannot be examined as witnesses of each other's conduct. It is necessary that all the jurors sworn should agree to the inquest.

Debt for $3,000, the damages assessed by an inquisition taken under the act of congress of the 3d of March, 1809 (2 Stat. 539), incorporating "The President, Directors, and Company of the Georgetown and Alexandria Turnpike Road." This inquisition had been quashed by the circuit court, but their decision was reversed by the supreme court of the United States, because the circuit court had no jurisdiction of that matter.

[1] [Reported by Hon. William Cranch, Chief Judge.]

6 Cranch [10 U. S.] 233. At the last term the defendants demurred to the declaration in the present case, because it contained no profert of the inquisition, nor prout patet per recordum.

But THE COURT overruled the demurrer, and adjudged nil debet to be a good plea; under which plea the defendants now offered evidence of partiality, fraud, and misconduct on the part of jurors upon the inquest.

To this E. J. Lee and Mr. Swann, for the plaintiff, objected that these are facts of which the plaintiff cannot be supposed to be conusant, or to be prepared to controvert. The plea of nil debet does not deny the validity of the inquisition.

THE COURT, however, (THRUSTON, Circuit Judge, absent) permitted the evidence to be given.

The defendants then offered Mr. Threlkeld, one of the inquest, as a witness to prove the improper conduct of the other jurors. But THE COURT refused, on the ground of the general policy of refusing to hear the mutual recriminations of jurors.

Mr. Key, for the defendant, then objected that the inquisition should have been assented to by all the jurors who were sworn. Whereas, although it was signed by all who were sworn (16), it was agreed to by 12 only.

E. J. Lee, contra. The act cannot mean that the whole 24 should agree. It says there shall be not less than 12; from which it is to be inferred that if twelve agree, it is sufficient. The supreme court said that if the inquisition had been found by 11 jurors it would have been void; implying that if 12 had agreed it would have been good.

THE COURT stopped Mr. Key from reply, and instructed the jury that the inquisition was not sufficient in law to support the plaintiff's action; it appearing on the face of the inquisition, and by parol testimony, that all the jurors sworn did not agree thereto, although all signed it.

The plaintiff took a bill of exceptions, but did not prosecute a writ of error.

---

CURTISS v. STORRS. See Case No. 1,201.

CURTIUS (WILSON v.). See Case No. 17,800.

---

## Case No. 3,507.

### CURTS et al. v. CISNA et al.

[7 Biss. 260;[1] 8 Chi. Leg. News, 402.]

Circuit Court, W. D. Wisconsin. Aug., 1876.

AGENT CANNOT ACQUIRE ADVERSE TITLE — BONA FIDE PURCHASER — MUST HAVE OBTAINED THE LEGAL ESTATE.

1. An agent to pay taxes on the lands of his principal, cannot acquire a valid tax deed on the same when they have been sold for taxes.

2. Where an agent had acquired a tax deed on the lands of his principal, and had contracted to sell the same to a third party, who had no notice of the fraud, but his agent, in making the purchase, had such knowledge, and such purchaser had received a contract only for a deed, and had paid two-thirds of the purchase-money, held, that the fact that the agent of such purchaser had had knowledge of such fraud, was not sufficient to affect his principal, unless the facts and circumstances were such as to show that he had the same in mind at the time of the transaction of the purchase; but that the right of such purchaser to call for a conveyance from the fraudulent grantee in the tax deed, was an equitable right merely, and that the right of the original owner being the oldest equity, must prevail.

3. A purchaser under a contract for a deed, though he may have paid all of the purchase-money is not protected as a bona fide purchaser; nor, if he has not obtained a conveyance of the legal estate, can he insist on the re-payment of what he has paid on the contract as a condition of surrendering his claim. He must rely on the responsibility of his vendor.
[See Baker v. Whiting, Case No. 787.]

4. A purchaser without notice will not be protected against the superior equity of an adverse claim, and where a party had purchased what in reality was only a tax title, he must be held as having assumed the burden of maintaining that such tax title had extinguished the patent title, and which, as to him, was an adverse one.

In equity.

Gregory & Pinney, for complainants.

Tyler & Dickinson, R. J. McBride, and B. F. French, for defendants.

Before DAVIS, Circuit Justice, and HOPKINS, District Judge.

HOPKINS, District Judge. The bill [by John F. Curts and others] in this case charges that one Horatio Curts was in 1865 the owner of the land in controversy, being 320 acres of heavily timbered land in Clark county, in this state, and that he employed the defendant [Stephen] Cisna as his agent to pay the taxes thereon, as well as upon other lands owned by him in that vicinity, as he was a non-resident, and furnished him the funds necessary for that purpose; that the general taxes due in the winter of 1865, were paid by defendant for him, but a special war bounty tax was levied in February, 1865, of about $13, of which he had no notice, and for which the land was sold in May, 1865, without his knowledge; that the defendant Cisna continued to pay his taxes up to the time of his death in 1868; that on his death his property descended to John Curts, his father, who thereafter continued to employ Cisna to pay the taxes for him, as he had before done for Horatio, his son, and that he furnished the necessary funds to pay all taxes, and to redeem from tax sales as might be necessary, up to the time of his death in March, 1874; that the defendant Cisna paid the taxes up to the time of his death, either directly or by redemption, and never notified him of the tax deed mentioned in the complaint, or of the existence of the tax for which it was given; that in 1869 Cisna, discovering that the land had been sold for the special tax in 1865, and that the certificates

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]